# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY E. REDICK, III, | Case No. 1:21-cv-00287-NONE-SAB |
| Plaintiff, | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE A FIRST AMENDED COMPLAINT |
| v. | |
| SONORA POLICE DEPARTMENT, et al., | (ECF No. 1) |
| Defendants. | **THIRTY (30) DAY DEADLINE** |

Stanley E. Redick, III ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983.  Currently before the Court for screening is Plaintiff's complaint, filed March 1, 2021.  (ECF No. 1.)

## I.

## SCREENING REQUIREMENT

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis*

proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming *sua sponte* dismissal for failure to state a claim).  The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 556 U.S. at 678.  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.' "  Id. (quoting Twombly, 550 U.S. at 557).  Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff names the following parties as defendants: (1) the Sonora Police Department

1   (the "Police Department"); (2) the Tuolumne County Jail (the "County Jail"); and (3) the
2   Tuolumne County District Attorney's Office (the "District Attorney's Office").  (Compl. 1-3,
3   ECF No. 1.)[1]  Plaintiff's complaint is separated into different sections pertaining to the three
4   defendants.  The first section pertains to the Police Department and contains a list of ten types of
5   claims or individual allegations.  The other two defendants' sections contain some of the
6   identical individually numbered claims, however, only seven (7) are listed against the District
7   Attorney's Office, and only three (3) are listed against the County Jail.

8       Before turning to the individually listed claims, the Court will first summarize facts
9   contained in some of the attached documents.

10          **A.    The Grievance Letter**

11          Plaintiff attaches an undated document entitled "Grievance Letter."  (Compl. 17.)  It is
12   not clear if the Grievance Letter was initially directed to the Court in this action, however, it does
13   provide a concise explanation of the Plaintiff's allegations and basis for sought damages.

14          In sum, Plaintiff states that on December 19, 2018, he turned himself in to the County Jail
15   pursuant to an "unknown" felony warrant issued on December 13, 2018, that was issued based
16   on an incident that occurred at a Lowe's store in Sonora California.  (Compl. 17.)  Plaintiff
17   alleges he attempted to make countless requests to utilize facial recognition and fingerprint
18   evidence from the Lowe's store, but felt defeated and neglected by the system due to the lack of
19   due diligence by the arresting officer and the loss prevention office of Lowe's.  (Id.)  Plaintiff
20   believes he was afforded no chance to clear his name and prove his innocence, and if the
21   evidence was examined in its entirety, it would have exonerated him as a possible suspect.  (Id.)

22          After turning himself in, Plaintiff states he was "immediately handcuffed and thrown in
23   jail amongst murder[er]s and convicted rapists for 72 hours including one of my two cell mates
24   which was my cousin Elton Redick who had just recently [been] sentenced to 67 years for first
25   degree murder [and] [it] was one of the scariest times" of Plaintiff's life.  (Id.)  Plaintiff states
26   that when he was arraigned, he was finally informed by the judge that the reason he was arrested

27   _____
[1] Plaintiff lists the Tuolumne County Superior Court in relation to one allegation in the complaint, however it does
not appear that Plaintiff intended to name the court as a defendant.  Nonetheless, the Court will provide the
28   standards pertaining to judicial immunity below.

was because he had been accused of stealing tools from Lowe's, which Plaintiff alleges is not true because he never purchased or stole tools on that day because he was with friends and his wife at Black Oak Casino at the time the alleged crime occurred.  (Id.)

Thereafter, Plaintiff says over the next two years he lost his career, job opportunities, and his family suffered greatly.  (Id.)  Plaintiff states he should have never faced the gross negligence from different corporations and law enforcement, and at a minimum, he deserved the proper time from the authorities to look into the case before such rash decisions were made.  Plaintiff alleges the district attorney rushed into a presumption of guilt only to move onto the next case and this shows the fault in the justice system in Tuolumne County, which carries one of the heaviest caseloads in the United States, resulting in not giving proper time to complete the due diligence each citizen deserves before presumed guilty.  (Compl. 18.)

Plaintiff alleges he was a victim of malicious prosecution by the District Attorney's Office and the Police Department, as his case was dismissed on November 2, 2020, approximately two years after turning himself in.  (Id.)  Plaintiff avers to receiving a call from his attorney who had "received paperwork and the name of the actual person who committed the crimes at Lowe's" on November 3, 2018.  (Id.)

## B. Allegations in the Police Narrative Report

Plaintiff attaches a November 16, 2018 report from the Police Department describing events that occurred on November 3, 2018, and November 10, 2018.  (Compl. 19.)  According to the report, a Lowe's security official reported three male subjects arrived at the store in the same vehicle on November 3, 2018.  One of the individuals was later identified as the Plaintiff.[2]

Plaintiff was alleged to have entered the store first, and the other two subjects entered after.  Subject #1 got into the electric service cart for disabled individuals.  The three subjects selected merchandise totaling $2,077.98.  Plaintiff and Subject #2 allegedly exited through the entrance with shopping carts containing unpaid items.  Subject #2 abandoned one shopping cart containing $655.84 worth of merchandise when store employees approached the vehicle, and

---

[2]  The Court will refer to this subject as Plaintiff, however, the Court only means to refer to Plaintiff here as the person alleged to have been identified as one of the subjects, and does not mean to imply that Plaintiff was in fact the subject involved in the incident.  The Court will refer to the other two individuals as Subject #1 and Subject #2.

1    both Plaintiff and Subject #2 are alleged to have driven away with a 2200 watt inverter valued at

2    $649.00, and a $449.00 chainsaw that Plaintiff was alleged to have stolen.

3       The Lowe's security official told the police officer that Plaintiff and Subject #2

4    abandoned Subject #1 at the store, who had also stolen merchandise valued at $315.19.  Subject

5    #1 waited in the parking lot until an uninvolved elderly female customer offered him a ride and

6    he left in the vehicle with the merchandise.  The official also stated several Lowe's customers

7    posted photos and videos on the Tuolumne County Incident Feed of a Buick leaving the parking

8    lot, and the officer requested footage from Lowe's.

9       On November 10, 2018, an officer was dispatched to Lowe's when the official reported

10   that Subject #1 and Plaintiff allegedly came back to the store to return some of the stolen

11   merchandise, consisting of flooring which Subject #1 was alleged to have stolen.  The officer

12   identified Subject #1 and Plaintiff outside the store and made contact with them.  The report

13   specifically notes that Plaintiff was allegedly wearing the same clothing that he was identified as

14   wearing on November 3, 2018, at the Lowe's store.[3]  Not knowing the full details of the case, the

15   officer allowed Plaintiff and Subject #1 to leave the store with the merchandise, and the officer

16   brought the initial report from the security official, the still images, and the video evidence of the

17   initial theft, back to the Sonora Police Department.  The report states the officer watched the

18   video and recognized the third subject.

19      **C.**  **Rebuttal to Sonora Police Department Narrative**

20      Plaintiff also attaches a document entitled "Rebuttal to Sonora Police Department

21   Narrative."  (Compl. 20.)  Plaintiff essentially proffers he was not involved in the theft on

22   November 3, 2018, and was not at Lowe's on such date.  Plaintiff states that he did in fact go to

23   Lowe's on November 10, 2018, to exchange wood flooring which belonged to the individual

24   identified as Subject #1.  However, Plaintiff argues he was installing wood flooring for Subject

25   #1, was informed from Subject #1 that the flooring was from Lowe's, and that it could be

26   exchanged at Lowe's due to the wood flooring chipping off of the corners.  Plaintiff disputes the

27     [3]  The police report appears to mistakenly refer to November 4, 2018, the date the initial report was taken, rather
     than November 3, 2018, the date of the alleged crime.  (Compl. 19.)  Plaintiff correctly highlights this is the

28   incorrect date in his attached rebuttal.  (Compl. 20.)

1 report that he was wearing the same clothing as the individual identified on November 3, 2018.

2 (Compl. 20-21.)

3     **D.**     **Plaintiff's Individually Listed Claims and Allegations**

4     Plaintiff lists ten (10) individual claims, or allegations containing legal citations.  All ten

5 (10) are alleged against the Police Department.  Seven (7) are alleged against the District

6 Attorney's Office.  Three (3) are alleged against the County Jail.

7     1.     <u>Claims Against all Defendants</u>

8     Plaintiff lists three claims in an essentially identical way directed against all three

9 Defendants.

10     Plaintiff claims intentional infliction of emotional distress from slander, and or

11 defamation of character, and appears to cite California Penal Code § 4030 pertaining to strip and

12 body cavity searches, and 42 U.S.C. § 1983.  (Compl. 6, 9, 11.)  Plaintiff alleges the Defendants

13 deprived him of rights and privileges under the United States Constitution.  Plaintiff also lists the

14 Tuolumne County Superior Court in this section of the complaint, however it is not clear if

15 Plaintiff intended to name the state court as a separate defendant.  (Compl. 6, 11.)

16     Plaintiff claims gross maliciousness and negligence by the arresting officer, who

17 subjected Plaintiff to unreasonable force in connection with the arrest, subjected Plaintiff to a

18 strip search humiliating him during the booking process, and made Plaintiff an accused citizen

19 when he was not guilty.  (Compl. 6-7, 9, 11.)

20     Plaintiff claims a violation of California's Tom Bane Civil Rights Act, Civil Code § 52.1

21 for: (a) humiliating battery against Plaintiff for an illegal search and seizure, and strip search; (b)

22 placement in a highly volatile incarceration room with accused murderers for a period of 72

23 hours without Plaintiff even knowing what his alleged charges were; and (c) "[i]mpeach the

24 accusers as they did not do their [due] diligence into ownership to the alleged crime," and

25 Plaintiff motioned the District Attorney's Office and the courts multiple times asking for a

26 dismissal of this case based on a false warrant without probable cause.

27 / / /

28 / / /

2.     Claims Against Defendants the Sonora Police Department and Tuolumne District
Attorney's Office

In addition to the three claims discussed in the previous subsection, Plaintiff lists four additional claims that are directed against both the Police Department and the District Attorney's Office.

Plaintiff lists a claim for mistaken identity for claiming a United States citizen committed a crime.  (Compl. 5, 8.)

Plaintiff lists a claim for a malicious false accusation that Plaintiff was involved in the crime at Lowe's on November 3, 2018.  (Id.)

Plaintiff then appears to cite the United States Court of Appeals for the Eighth Circuit, but does not provide the Court with a workable citation to locate the specific case.  (Id.)  The citation appears to refer to the probable cause standard, and that an officer must perform at least a cursory investigation to avoid a wrongful accusation, and states that at a minimum, an investigation should have involved interviewing other witnesses and video from Lowe's claiming facial recognition, before establishing for a definite fact that Plaintiff was guilty of such crimes.  (Id.)

Finally, Plaintiff lists a claim under 42 U.S.C. § 1983 for lack of probable cause for the arrest, and under the totality of the circumstances standard requiring a prudent person to conclude there was a fair probability that Plaintiff had committed a crime.  (Id.)

3.     Claims Against the Sonora Police Department Only

Plaintiff lists three additional claims against the Police Department only.  (Compl. 5.)

First, for "misrecolection [sic]," described as remembering the details of the crime committed.  (Id.)

Second, for official misconduct of the Sonora Police Department in handling witness statements, and for misleading the forensic evidence as the police should not have asked leading questions which caused witnesses to create false memories.  (Id.)

Last, Plaintiff again appears to refer to the United States Court of Appeals for the Eighth Circuit for a probable cause standard, stating an officer need not conduct a mini trial before

1  making an arrest, but probable cause does not exist where minimal further investigation would

2  have exonerated Plaintiff from these charges.  (Id.)

3        **E.**    **Claimed Damages**

4        Where Plaintiff lists individual claims against each Defendant, Plaintiff also lists the

5  following types of damages: (1) lost wages; (2) medical and incarceration fees; (3) attorneys'

6  fees; (4) pain and suffering, mental distress; and (5) presumed damages from violation of civil

7  rights.  (Compl. 5, 8, 11.)

8        Further, Plaintiff attaches a document entitled "Itemized Special Damages."  (Compl.

9  14.)  In this attachment, Plaintiff appears to claim lost wages from three different professions: (1)

10  as a California Licensed Fight Promotor for Cagebound Fighting Championship, with lost wages

11  from four events per year at $60,000 per event, over two years, for a total of $480,000.00; (2) as

12  a Licensed California Contractor with total lost wages since November 2018 of $260,000.00,

13  with future loss of profit estimated at $10,400,000.00 over the next forty (40) years, and an

14  additional $2,340,000.00 from loss of credibility in the profession; and (3) Licensed Power Pole

15  Fielding Engineer with total lost wages of approximately $336,000.00, in addition to

16  $244,000.00, for the loss of credibility relating to thirty years of prior training.  (Compl. 14-15.)

17                               **III.**

18                     **DISCUSSION**

19        **A.**    **Federal Rule of Civil Procedure 8**

20        Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim

21  showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "Such a statement must

22  simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which

23  it rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal

24  quotation marks omitted).  Detailed factual allegations are not required, but "[t]hreadbare recitals

25  of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

26  Iqbal, 556 U.S. at 678 (citation omitted).  This is because, while factual allegations are accepted

27  as true, legal conclusions are not.  Id.; see also Twombly, 550 U.S. at 556-57; Moss v. U.S.

28  Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  Therefore, Plaintiff must set forth "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678  (citations and internal quotation marks omitted).

As currently pled, Plaintiff's complaint does not contain enough factual details to permit the Court to draw the reasonable inference that any of the Defendants are liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.  Most of Plaintiff's allegations are vague and conclusory statements that his rights were violated.

Plaintiff names only government entities as Defendants.  Below, the Court addresses the legal issues related to pursuing claims against the Police Department, the County Jail, and the District Attorney's Office, rather than the individuals from these agencies that were involved, and will provide Plaintiff with the relevant legal standards.

While Plaintiff names the Police Department as a defendant, it appears his only allegations against the investigating officers appears to be a vague claim that they misled witnesses in making statements, and that he was subjected to a strip search when he was arrested and booked into jail for seventy-two (72) hours.  (Compl. 5, 17.)  However, Plaintiff does not allege any officer arrested or performed a search of Plaintiff until a warrant was issued, as Plaintiff alleges he turned himself to the County Jail pursuant to a warrant.  (Compl. 17.)  The Court will provide the relevant legal standards concerning searches under the Fourth Amendment below, as well as the relevant standards pertaining to a jail or prison's right to perform strip searches prior to booking a pre-trial detainee into jail and excessive force standards.   The Court will also provide the standard for falsifying a police report.   Other than these allegations, Plaintiff does not present any further allegations concerning the Police Department or County Jail, and does not present any specific details concerning individual police officers, or individual officials in the jail, nor any training or policy of the Police Department or County Jail, as discussed below.

Other than generally arguing he is innocent of the crime was he was accused of, that he motioned the District Attorney's Office multiple times for a dismissal of this action, and that a

1  better investigation should have been completed, Plaintiff does not specifically allege any actions
2  by the District Attorney's Office, or any individual that works for the District Attorney's Office.
3  (Compl. 8-10.)

4    For these reasons, Plaintiff's complaint does not comply with the requirements of Rule
5  8(a)(2).  The Court will grant Plaintiff leave to file an amended complaint to allow Plaintiff to
6  provide additional factual details to the Court.  However, the Court notifies Plaintiff to consider
7  the specific facts of his allegations in relation to the legal standards discussed below, when
8  deciding whether to file a first amended complaint.

9    **B.**  **Section 1983 and Municipal Liability**

10    Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or
11  other federal rights by persons acting under color of state law.  <u>Nurre v. Whitehead</u>, 580 F.3d
12  1087, 1092 (9th Cir 2009); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006);
13  <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).  To state a claim under section 1983, a
14  plaintiff is required to show that (1) each defendant acted under color of state law and (2) each
15  defendant deprived her of rights secured by the Constitution or federal law.  <u>Long</u>, 442 F.3d at
16  1185 (9th Cir. 2006).  There is no *respondeat superior* liability under section 1983, and
17  therefore, each defendant is only liable for his or her own misconduct.  <u>Iqbal</u>, 556 U.S. at 677.
18  To state a claim, Plaintiff must demonstrate that each defendant personally participated in the
19  deprivation of his rights.  <u>Jones</u>, 297 F.3d at 934.

20    Here, Plaintiff has not named any natural persons as individual defendants, but rather
21  names the Police Department, the County Jail, and the District Attorney's Office.  Plaintiff also
22  avers to a claim against the Tuolumne County Superior Court.  (Compl. 6.)

23    However, a local government unit may not be held responsible for the acts of its
24  employees under a *respondeat superior* theory of liability.  <u>Monell v. Department of Social</u>
25  <u>Services</u>, 436 U.S. 658, 691 (1978).  Rather, a local government unit may only be held liable if it
26  inflicts the injury complained of through a policy or custom.  <u>Waggy v. Spokane County</u>
27  <u>Washington</u>, 594 F.3d 707, 713 (9th Cir. 2010).  Generally, to establish municipal liability, the
28  plaintiff must show that a constitutional right was violated, the municipality had a policy, that

policy was deliberately indifferent to plaintiff's constitutional rights, and the policy was "the moving force" behind the constitutional violation.  Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 400 (1997); Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002).  "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' "  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).

Further, a failure to train may establish liability where such omission of training amounts to deliberate indifference to a constitutional right.  Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010), overruled on other grounds by Castro, 833 F.3d 1060.  This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  Id. at 1249 (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989).  "For example, if police activities in arresting fleeing felons 'so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers,' then the city's failure to train may constitute 'deliberate indifference.' "  Id.  "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.' "  City of Canton, 489 U.S. at 379.  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  Connick v. Thompson, 563 U.S. 51, 62 (2011) (citation omitted).

A plaintiff seeking to impose liability upon a municipality is required to identify the policy or custom that caused the constitutional injury.  Bd. of Cty. Comm'rs of Bryan Cty., Okl., 520 U.S. at 403.  Plaintiff has failed to state a plausible claim based on a custom or policy or failure to train.  Plaintiff has not made any allegations to establish liability against the Police Department, the County Jail., the District Attorney's Office, nor the Tuolumne County Superior Court.

1  Although Plaintiff has not alleged any facts that would support a claim against the named

2  Defendants, the Court will now provide the *pro se* Plaintiff with additional information and legal

3  standards relating to the types of claims Plaintiff listed in his listed claims and allegations.

4  (Compl. 5-12.)

5      **C.      Unlawful Arrest, Search, and Excessive Force under the Fourth Amendment**

6      Plaintiff avers to the probable cause standard for officers making an arrest.  (Compl. 6.)

7  Plaintiff also claims the arresting officer subjected Plaintiff to unreasonable force in connection

8  with the arrest, subjected Plaintiff to a humiliating strip search during the booking process, and

9  committed battery in conducting such alleged illegal search and seizure.  (Compl. 6-7, 9, 11.)

10     The Fourth Amendment to the Constitution of the United States provides:

11         The right of the people to be secure in their persons, houses, papers, and effects,
           against unreasonable searches and seizures, shall not be violated, and no Warrants
12         shall issue, but upon probable cause, supported by Oath or affirmation, and
           particularly describing the place to be searched, and the persons or things to be
13         seized.

14  U.S. Const., amend. IV.

15     Warrantless searches would violate the Fourth Amendment unless the search falls within

16  an exception to the Fourth Amendment's warrant requirement.  See United States v. Ojeda, 276

17  F.3d 486, 488 (9th Cir. 2002) (citing Katz v. United States, 389 U.S. 347, 357 (1967)).

18     "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth

19  Amendment, provided the arrest was made without probable cause or other justification."

20  Dubner v. City & Cty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001).  "Probable cause to

21  arrest exists when officers have knowledge or reasonably trustworthy information sufficient to

22  lead a person of reasonable caution to believe that an offense has been or is being committed by

23  the person being arrested."  United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007).  "While

24  conclusive evidence of guilt is of course not necessary under this standard to establish probable

25  cause, [m]ere suspicion, common rumor, or even strong reason to suspect are not enough."  Id.

26  (internal quotations and citation omitted) (alteration in original).

27     Plaintiff fails to state a claim for unlawful arrest because he specifically states he turned

28  himself in to the jail pursuant to a warrant.  "The Fourth Amendment requires law enforcement

officers to have probable cause to make an arrest if they do not have an arrest warrant." Braden v. Los Angeles Police Dep't, No. CV 16-7633 JVS(JC), 2017 WL 78467, at *3 (C.D. Cal. Jan. 9, 2017) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)); see also Blankenhorn v. City of Orange, 485 F.3d 463, 476 (9th Cir. 2007) (Stating it was "clearly established long ago that an officer may not conduct a warrantless arrest absent probable cause."). While Plaintiff did not directly name the Tuolumne County Superior Court nor a judge in the complaint, to the extent Plaintiff alleges the warrant was not based on probable cause, the Court provides the standards for judicial immunity below.

To the extent Plaintiff claims the search conducted during the booking process was unlawful or amounted to excessive force, Plaintiff has not stated facts that would support a finding that his constitutional rights were violated. Aside from stating the emotional impact of the process, Plaintiff does not describe what happened in any detail. The Court will provide the Plaintiff with the legal standards governing searches conducted at booking for pre-trial detainees, and notifies Plaintiff that routine strip searches performed at booking are generally not unlawful absent extraordinary circumstances.

Both convicted prisoners and pretrial detainees retain some Fourth Amendment rights upon commitment to a corrections facility, however, the Fourth Amendment only prohibits unreasonable searches. See, e.g., Bell v. Wolfish, 441 U.S. 520, 558 (1979). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application [and] each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.

The Ninth Circuit has recognized that strip searches may be unreasonable if "excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). " 'Correctional officials have a significant interest in conducting a thorough search as a standard part of the intake process,' and the Supreme Court has held that all detainees, when joining a general detained population, can be subject to strip

searches even without reasonable suspicion that a specific individual is concealing weapons or other contraband." Belyew v. Honea, No. 217CV0508KJMACP, 2020 WL 6305866, at *2–3 (E.D. Cal. Oct. 28, 2020) (quoting Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 30-39 (2012)), report and recommendation adopted, No. 217CV0508KJMACP, 2021 WL 720231 (E.D. Cal. Feb. 24, 2021); see also Fouche v. Holencik, No. ED CV 10-0087-MMM, 2012 WL 1901826, at *2–3 (C.D. Cal. Apr. 17, 2012) ("Applying the *Bell* and *Turner* factors, the United States Supreme Court recently held that a jail's policy requiring all detainees—including those being held on misdemeanor charges—to be strip searched prior to being placed in the general population is reasonable under the Fourth Amendment.") (citing Florence, 566 U.S. 318).  "In examining the conditions of pretrial detention, the question 'is whether those conditions amount to punishment of the detainee.' " Belyew, 2020 WL 6305866, at *4 (quoting Bell, 441 U.S. at 535).

Plaintiff has not alleged any specific facts that would support a claim that the strip search performed at booking was unlawful or violated his constitutional rights, whether Plaintiff states it was an exercise of excessive force, or an unlawful search.  See Bell, 441 U.S. 520; Belyew, 2020 WL 6305866; Michenfelder v. Sumner, 860 F.2d at 332; Cf. Moore v. Howell, No. 219CV02108GMNBNW, 2020 WL 7081580, at *3 (D. Nev. Dec. 2, 2020) (finding cognizable claim where defendant "conducted a vindictive strip search of Plaintiff and other inmates in retaliation for another inmate filing a PREA complaint . . . [that] was not related to any legitimate penological interest and was only conducted to punish Plaintiff and other inmates for the PREA complaint.").

As explained above, to the extent Plaintiff brings claims against the Police Department or County Jail generally, any such claims fail because he has presented no allegation of a policy, custom, or practice, nor stated a failure to train demonstrating deliberate indifference to his constitutional rights.

### D.    Falsification of Police Records

Plaintiff avers to a claim for official misconduct by the Police Department in handling witness statements, and for misleading the forensic evidence as the police should not have asked

1   leading questions which caused witnesses to create false memories.  (Compl. 5.)

2       Individuals have a constitutional due process right "not to be subjected to criminal

3   charges on the basis of false evidence that was deliberately fabricated by the government."

4   Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc).  To establish such a due

5   process violation, a plaintiff must, at a minimum, allege either: (1) that government officials

6   continued their investigation "despite the fact that they knew or should have known that

7   [Plaintiff] was innocent;" or (2) "used investigative techniques that were so coercive and abusive

8   that [they] knew or should have known those techniques would yield false information."

9   Cunningham v. Perez, 345 F.3d 802, 811 (9th Cir. 2003) (quoting Devereaux, 263 F.3d at 1076).

10      While Plaintiff attaches a police report and a rebuttal stating certain facts are incorrect,

11  such as his presence on the date of the crime or that he was not wearing the same clothing as the

12  person in the video, Plaintiff does not name any specific individual officers as defendants, nor

13  does he indicate in any specific detail how any officer mishandled witnesses or any specific

14  forensic evidence in a manner that demonstrates intentional falsification of any record or

15  evidence.  Further, as for the Police Department named as a defendant, Plaintiff has not

16  sufficiently alleged any misconduct was part of a practice, custom, or policy, in order to establish

17  municipal liability against the Police Department or District Attorney's Office, and has not

18  alleged or named any prosecutor who knowingly used false information in pursuing criminal

19  charges that was obtained by any police officer.  Plaintiff's bare allegation is not sufficient to

20  establish a claim, and does not satisfy the requirements of Federal Rule of Civil Procedure 8 as

21  the Court found above.

22          **E.      Malicious Prosecution and Prosecutorial/Judicial Immunity**

23      Plaintiff states he was subjected to a malicious false accusation that he was involved in

24  the crime on November 3, 2018.  (Compl. 8.)

25      A claim for malicious prosecution or abuse of process is not generally cognizable under

26  Section 1983 if a process is available within the state judicial system to provide a remedy.  Usher

27  v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987) (citations omitted).  The exception is

28  "when a malicious prosecution is conducted with the intent to deprive a person of equal

protection of the laws or is otherwise intended to subject a person to denial of constitutional rights." Id. (citations omitted).  In order to prevail on a Section 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995) (citations omitted); see also Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004); Lacey v. Maricopa County, 693 F.3d 896, 919 (9th Cir. 2012).  A malicious prosecution claim may be brought against prosecutors or against the individuals who wrongfully caused the prosecution. Smith v. Almada, 640 F.3d 931, 938 (9th Cir. 2011).  Probable cause is an absolute defense to malicious prosecution. Lassiter v. City of Bremerton, 556 F.3d 1049, 1054 (9th Cir. 2009).

In order to state a malicious prosecution claim, Plaintiff must show that the prior proceeding was commenced by or at the direction of the defendant and it was: 1) pursued to a legal termination favorable to plaintiff; 2) brought without probable cause; and 3) initiated with malice. Ayala v. Environmental Health, 426 F.Supp.2d 1070, 1083 (E.D. Cal. 2006).  For the termination to be considered "favorable" to the malicious prosecution plaintiff, it must be reflective of the merits of the action and of the plaintiff's innocence of the charges. Villa v. Cole, 4 Cal.App.4th 1327, 1335 (1992); Awabdy, 368 F.3d at 1068 ("An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence.").  In this regard, "a dismissal in the interests of justice satisfies this requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant," and "[w]hen such a dismissal is procured as the result of a motion by the prosecutor and there are allegations that the prior proceedings were instituted as the result of fraudulent conduct, a malicious prosecution plaintiff is not precluded from maintaining his action unless the defendants can establish that the charges were withdrawn on the basis of a compromise among the parties or for a cause that was not inconsistent with his guilt." Id.

Plaintiff has failed to name as a defendant any individual who caused the case to be

1   prosecuted against Plaintiff with malice and without probable cause nor presented any specific

2   facts about any prosecution following his release after the seventy-two (72) hour hold after

3   turning himself in.  Plaintiff alleges he was a victim of malicious prosecution because his case

4   was dismissed approximately two years after turning himself in.  (Compl. 18.)  Plaintiff avers to

5   receiving a call from his attorney who had "received paperwork and the name of the actual

6   person who committed the crimes at Lowe's" on November 3, 2018.  (Id.)

7          Plaintiff has not provided sufficient facts regarding the dismissal for the Court to

8   determine whether a malicious prosecution claim can be stated.  Plaintiff is advised that a

9   dismissal resulting from negotiation, settlement or agreement is generally not deemed a

10   favorable termination of the proceedings.  Villa, 4 Cal.App.4th at 1335.  "[A]s a matter of law. . .

11   the favorable termination which is essential to the plaintiff in a malicious prosecution action can

12   not be based on the dismissal of the criminal charges remaining after the defendant in a criminal

13   proceeding has entered a plea of nolo contendere to one or more of the charges in the accusatory

14   pleading pursuant to a plea bargain.  Cote v. Henderson, 218 Cal. App. 3d 796, 804 (1990).

15   Therefore, if the charges were dismissed as part of a plea bargain it would not be a favorable

16   termination because it would not indicate that Plaintiff was innocent of the charges.

17          Further, Plaintiff is advised that judges and prosecutors are immune from liability under §

18   1983 when they are functioning in their official capacities under proper jurisdiction.  See Imbler

19   v. Pactman, 424 U.S. 409, 427 (1976); see also Olsen v. Idaho State Bd. of Medicine, 363 F.3d

20   916, 922 (9th Cir.2004) ("Absolute immunity is generally accorded to judges and prosecutors

21   functioning in their official capacities"); Ashelman v. Pope, 793 F.2d 1072, 1075-77 (9th

22   Cir.1986) (noting that judges are generally immune from § 1983 claims except when acting in

23   "clear absence of all jurisdiction . . . or performs an act that is not 'judicial' in nature," and

24   prosecutors are generally immune unless acting without "authority") (internal citations omitted);

25   Walters v. Mason, No. 215CV0822KJMCMKP, 2017 WL 6344319, at *2 (E.D. Cal. Dec. 12,

26   2017) (same); Forte v. Merced Cty., No. 1:15-CV-0147 KJM-BAM, 2016 WL 159217, at *12–

27   13 (E.D. Cal. Jan. 13, 2016) ("prosecutorial immunity protects eligible government officials

28   when they are acting pursuant to their official role as advocate for the state"), report and

recommendation adopted, No. 1:15-CV-0147-KJM-BAM, 2016 WL 739798 (E.D. Cal. Feb. 25, 2016); Torres v. Saba, No. 16-CV-06607-SI, 2017 WL 86020, at *3–4 (N.D. Cal. Jan. 10, 2017). Where a prosecutor acts within his authority " 'in initiating a prosecution and in presenting the state's case,' absolute immunity applies."   Ashelman, 793 F.2d at 1076 (quoting Imbler, 424 U.S. at 431).   This immunity extends to actions during both the pre-trial and posttrial phases of a case.   See Demery v. Kupperman, 735 F.2d 1139, 1144 (9th Cir. 1984).

Plaintiff has not provided details regarding who prosecuted or maintained the charges, has not named an individual prosecutor as a Defendant, and does not allege any conduct by any named Defendant relating to this claim in the complaint.   Accordingly, Plaintiff has not stated a claim for malicious prosecution.

### F.   Allegations of Slander and Defamation

Plaintiff claims emotional distress from slander, and or defamation of character, and appears to cite California Penal Code § 4030 pertaining to strip and body cavity searches in relation to the claim.   Slander is an oral defamatory statement.   To bring a claim for defamation in a Section 1983 action, Plaintiff must meet the "stigma-plus," or "defamation-plus" standard.

"To establish a claim for defamation under Section 1983, a plaintiff must first establish defamation under state law."   Flores v. City of Bakersfield, No. 1:17-CV-1393-JLT, 2019 WL 7038385, at *17 (E.D. Cal. Dec. 20, 2019) (citing Crowe v. County of San Diego, 242 F.Supp.2d 740, 746 (S.D. Cal. 2003)).   Under California law, the elements of a defamation claim are: "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."   Kaufman v. United Health Group Inc., 546 Fed. Appx. 691, 692 (9th Cir.2013) (quoting Taus v. Loftus, 40 Cal.4th 683, 54 Cal.Rptr.3d 775, 151 P.3d 1185, 1209 (Cal.2007)).   To be actionable, an allegedly defamatory statement must, among other things, "contain a provably false factual connotation."   Gilbrook v. City of Westminster, 177 F.3d 839, 861 (9th Cir.) (citation omitted).   "Under California law, although a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement.   Jacobson v. Schwarzenegger, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004).

In a § 1983 action, injury to reputation alone is not enough to state a claim. "The procedural due process rights of the Fourteenth Amendment apply only when there is a deprivation of a constitutionally protected liberty or property interest." WMX Techs., Inc. v. Miller ("WMX II"), 197 F.3d 367, 373 (9th Cir. 1999). The Supreme Court has made it clear that reputation alone is not an interest protected by the Constitution. WMX II, 197 F.3d at 373; see Paul v. Davis, 424 U.S. 693, 706 (1976) ("the Court has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment"). "[R]eputational harm alone does not suffice for a constitutional claim." Miller v. California, 355 F.3d 1172, 1178 (9th Cir. 2004). Absent a change in status, "any harm or injury to that interest . . . inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law." Paul, 424 U.S at 712. Plaintiff must demonstrate the loss of a recognizable property or liberty interest in conjunction with the allegation that they suffered injury to reputation. Miller, 355 F.3d at 1179; Cooper v. Dupnik, 924 F.2d 1520, 1532 (9th Cir. 1991), rev'd on other grounds, 963 F.2d 1220, 1235 n.6 (9th Cir. 1992)). A plaintiff can meet this test by showing that "injury to reputation was inflicted in connection with a federally protected right" or that "injury to reputation caused the denial of a federally protected right." Herb Hallman Chevrolet, Inc. v. Nash–Holmes, 169 F.3d 636, 645 (9th Cir. 1999); Cooper, 924 F.2d at 1532-33. This is referred to both as a "defamation-plus" or "stigma-plus" claim. See, e.g., Flores, 2019 WL 7038385, at *17.

Plaintiff has not put forth factual allegations that his reputation was injured in connection with a federally protected right or that the damage caused him to be denied a federally protected right. Even if Plaintiff could not meet the defamation-plus standard but was able to demonstrate defamation under California law, the Court would also decline to exercise supplemental jurisdiction over such state claim because Plaintiff failed to state a separate cognizable federal claim, as explained above. See Ward v. Webber, No. 118CV00916SABPC, 2018 WL 3615853, at *3 (E.D. Cal. July 26, 2018) ("Because Plaintiff fails to state a cognizable federal claim, the Court will not exercise supplemental jurisdiction over his state law [slander] claim, even if he

1   cures the deficiencies and states a claim.") (citing 28 U.S.C. § 1367(a); <u>Herman Family</u>

2   <u>Revocable Trust v. Teddy Bear</u>, 254 F.3d 802, 805 (9th Cir. 2001)).

3         **G.**    **Intentional Infliction of Emotional Distress**

4         Plaintiff lists a claim for intentional infliction of emotional distress, averring to slander,

5   defamation, and violation of his constitutional rights.  (Compl. 6, 9, 11.)

6         The elements for a claim of intentional infliction of emotional distress under California

7   law are: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of

8   the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and

9   proximate causation of the emotional distress."  <u>Wong v. Tai Jing</u>, 189 Cal.App.4th 1354, 1376

10   (2010) (quoting <u>Agarwal v. Johnson</u>, 25 Cal.3d 932, 946 (1979)).  Conduct is "outrageous if it is

11   'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' "  <u>Simo</u>

12   <u>v. Union of NeedleTrades, Industrial & Textile Employees</u>, 322 F.3d 602, 622 (9th Cir. 2002)

13   (quoting <u>Saridakis v. United Airlines</u>, 166 F.3d 1272, 1278 (9th Cir. 1999)).  The emotional

14   distress must be "of such a substantial quantity or enduring quality that no reasonable man in a

15   civilized society should be expected to endure it."  <u>Simo</u>, 322 F.3d at 622.

16         Given the legal standards and facts discussed above pertaining to the Fourth Amendment

17   pertaining to the strip search of Plaintiff, Section 1983 linkage, prosecutorial/judicial immunity,

18   and defamation/slander, Plaintiff has not stated sufficient facts pertaining to any named

19   Defendant or unnamed individual that would rise to the level of intentional infliction of

20   emotional distress.

21                               **IV.**

22                         **CONCLUSION**

23         Based on the foregoing, Plaintiff's complaint fails to state a cognizable claim for relief.

24   The Court will grant Plaintiff an opportunity to amend his complaint to cure the above-identified

25   deficiencies to the extent he is able to do so in good faith.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130

26   (9th Cir. 2000).

27         Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what

28   each named defendant did that led to the deprivation of Plaintiff's constitutional rights, <u>Iqbal</u>,

556 U.S. at 678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555 (citations omitted).  Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927.  Therefore, Plaintiff's first amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's office shall send Plaintiff a complaint form;

2.      Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order; and

3.      If Plaintiff fails to file a first amended complaint in compliance with this order, the Court will recommend to the district judge that this action be dismissed, with prejudice, for failure to obey a court order, failure to prosecute, and for failure to state a claim.

IT IS SO ORDERED.

Dated:   **March 17, 2021**                                      _____
                                                         UNITED STATES MAGISTRATE JUDGE

21