1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| STANLEY E. REDICK, III, | Case No.  1:21-cv-00287-NONE-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM AND DISMISSING ACTION FOR FAILURE TO COMPLY WITH COURT ORDER AND FAILURE TO PROSECUTE |
| v. | |
| SONORA POLICE DEPARTMENT, et al., | |
| Defendants. | (ECF Nos. 11, 13) |
| | OBJECTIONS DUE WITHIN THIRTY DAYS |

11
12
13
14
15
16
17
18
19

**I.**

**INTRODUCTION**

20
21

Stanley E. Redick, III ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this

22 action pursuant to 42 U.S.C. § 1983.  The matter was referred to a United States magistrate judge

23 pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

24 Following screening orders issued on March 17, 2021 and May 14, 2021, Plaintiff filed a

25 second amended complaint on May 26, 2021.  (ECF No. 11.)  On August 10, 2021, the Court

26 issued a screening order finding that Plaintiff had failed to state any cognizable claims in his

27 second amended complaint, and granted Plaintiff thirty (30) days in which to file a third

28 amended complaint.  (ECF No. 13.)  More than thirty (30) days have passed and Plaintiff has

1  neither filed an amended complaint nor otherwise responded to the Court's August 10, 2021

2  order.[1]  For the reasons discussed herein, it is recommended that Plaintiff's second amended

3  complaint be dismissed for failure to state a cognizable claim, and this action be dismissed for

4  failure to comply with the Court's order, and failure to prosecute.

5                                                  **II.**

6                                **SCREENING REQUIREMENT**

7          Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court

8  determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which

9  relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from

10 such relief."  28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000)

11 (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners);

12 Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis*

13 proceedings which seek monetary relief from immune defendants); Cato v. United States, 70

14 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis*

15 complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998)

16 (affirming *sua sponte* dismissal for failure to state a claim).  The Court exercised its discretion to

17 screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii)

18 fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

19 defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

20         In determining whether a complaint fails to state a claim, the Court uses the same

21 pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a

22 short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R.

23 Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the

24 elements of a cause of action, supported by mere conclusory statements, do not suffice."

25 Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S.

26 544, 555 (2007)).

---

27 [1]  During this period, Plaintiff did file a notice of intent to proceed on Plaintiff's claim against Lowe's Home Centers,
28 LLC, in the related action, Redick v. Lowes Home Centers, LLC, Case No. 21-cv-00358-NONE-SAB, ECF Nos. 22, 23.

1    In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and

2    accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89,

3    94 (2007). Although a court must accept as true all factual allegations contained in a complaint,

4    a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A]

5    complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops

6    short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting

7    Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for

8    the court to draw the reasonable conclusion that the defendant is liable for the misconduct

9    alleged. Iqbal, 556 U.S. at 678.

### III.

### COMPLAINT ALLEGATIONS

12    Plaintiff's second amended complaint was essentially filed in the form of three separate

13    complaints. Each "sub-complaint" has its own caption page and signature block. However, the

14    second sub-complaint's signature block did not contain Plaintiff's signature, while the other two

15    did. (Pl.'s Second Am. Compl. ("SAC") 4, 10, 15, ECF No. 11.)

16    The first sub-complaint names the Sonora Police Department, an Officer Malon, and an

17    Officer Bowly as defendants (the "Police Department Defendants"). (Id. at 1-4.) The second

18    sub-complaint names the Tuolumne County District Attorney's Office, Laura Kreig, and Eric

19    Hovetter as defendants (the "District Attorney Defendants"). (Id. at 5-10.) Against the Police

20    Department Defendants and the District Attorney Defendants named in the first two sections,

21    Plaintiff brings the same claims, entitled as follows: (1) mistaken identity; (2) malicious false

22    accusations establishing probable cause; (3) misconduct; (4) gross negligence; (5) intentional

23    infliction of emotional distress; and (6) abuse of process. (Id. at 1, 5.)

24    The third section of the filing names the Tuolumne County Jail, and Booking Officer

25    King C1560 as defendants (the "Jail Defendants"). (Id. at 11.) Against the Jail Defendants,

26    Plaintiff brings claims entitled as: (1) misconduct; (2) gross negligence; (3) intentional infliction

27    of emotional distress; and (4) abuse of process. (Id.)

28    While not listed in the caption where Plaintiff listed the claims, in the body of each of the

1   three sub-complaints, Plaintiff also requests Defendants be held accountable for violations under

2   the Bane Act, California Civil Code Section 52.1.  (Id. at 3, 6-7, 12.)

3          Plaintiff seeks thirty-three million dollars in damages.  Each sub-complaint appears to

4   seek this amount against each group of defendants.  However, each sub-complaint contains

5   largely identical allegations against an unspecified defendant or unspecified defendants.

6          The Court shall now summarize the common and distinct aspects of each sub-complaint

7   below.  Plaintiff's first sub-complaint consists of five paragraphs that are each reproduced and in

8   their entirety in the second sub-complaint.  Paragraphs 4 and 5 from the first sub-complaint are

9   also reproduced verbatim in Plaintiff's third sub-complaint.

10         **A.      The First Sub-Complaint Naming the Police Department Defendants**

11         Plaintiff seeks 33 million dollars against "the Defendant, for the [d]amages they caused

12   with their mistaken identity using [Plaintiff's] information and photos, without [Plaintiff's]

13   consent on local news (Tuolumne County Incident Feed), police reports and media and falsely

14   stating [Plaintiff] committed crimes at Lowe's Home Centers LLC, Sonora Ca. on" November 3,

15   2018, and November 10, 2018.  (Id. at 1, ¶ 1.)[2]  Plaintiff argues there "was no factual [b]asis to

16   establish [p]robable [c]ause based o[n] the malicious false accusations, by witnesses or the

17   Defendant[']s false recollection to get a warrant or arrest [Plaintiff] as the totality of

18   circumstances known to the Defendant to determine if a prudent person would conclude a fair

19   probability that [Plaintiff] had committed a crime, as in this case establishing probable cause

20   would not have been possible as the evidence to prove [Plaintiff's] innocence was at the

21   Defendant's grasp and because of pure negligence by the Defendant the evidence was

22   overlooked that could have exonerated [Plaintiff] from the beginning."  (Id. at 1-2, ¶ 2.)  Plaintiff

23   proffers that on November 10, 2018, "the Defendant improperly handled the witness statements,

24   and forensic evidence as the Defendant's questions to witnesses [] created false recollections and

25   false memories used to get a false warrant and false arrest leading to false imprisonment for

26

27   [2]  The Court makes only select alterations when quoting Plaintiff's complaint as to avoid incorrectly altering the meaning of Plaintiff's statements.  It is not clear which Defendant Plaintiff refers to in certain allegations, or whether Plaintiff intended to refer to multiple or all of the Defendants.  The Court may also alter the capitalization of some words.

28

1    crimes [Plaintiff] did not commit [as Plaintiff] never committed a crime nor was [] at Lowe's

2    Sonora" on November 3, 2018, nor was Plaintiff "involved in [n]or did [he] commit a crime on

3    [November 10, 2018] at Lowe's Sonora as stated by the Defendant[]s." (Id. at 2, ¶ 2.)

4         Plaintiff states that due "to Defendant[']s gross malicious negligence, [Plaintiff] was

5    subject to unreasonable force being detained for crimes [he] did not commit when [he] went to

6    inquire about the warrant." Plaintiff was then detained and "not told what the crimes were or

7    why [he] was being detained until 3 days later during [his] false imprisonment for crimes [he]

8    did not commit all stenting from the [n]egligence by the Defendant [who] forced [Plaintiff] to be

9    incarcerated with [his] cousin whom just got sentenced by the same District Attorney in

10   [Plaintiff's] criminal case Laura Kreig, for 1st degree murder." (Id. at 2, ¶ 3.)

11        While not listed in the caption where Plaintiff listed the claims, in the body of the

12   complaint Plaintiff requests the Court hold the unspecified Defendant(s) "accountable for

13   violations under the Bane Act 52.1 for committing humiliator battery against [Plaintiff] for a[n]

14   illegal search and seizure being an accused citizen and not a guilty party, including I move to

15   Impeach the DEFENDANT'S for violation [of] my civil rights under the intentional infliction of

16   emotional distress violation California civ. Code 4030 and section 1983 [sic]." (Id. at 3, ¶ 4.)

17        Plaintiff states that the "[a]buse of [p]rocess by the Defendant's [sic] [in] obtain[ing] a

18   false warrant" violated his civil rights under the U.S. Constitution; that he was never guilty of

19   these crimes; that he was falsely imprisoned, arrested, and detained; that his name was slandered;

20   and that he was left to fight for his freedom for 2 years, facing trial two times. (Id. at 3, ¶ 5.)

21        **B.    The Second Sub-Complaint Naming the District Attorney Defendants**

22        Plaintiff again seeks 33 million dollars, and incorporates the same allegations, verbatim,

23   from the five paragraphs in the first sub-complaint into this second part against the District

24   Attorney Defendants.

25        Additionally, Plaintiff argues that the evidence submitted would not establish probable

26   cause for a warrant or arrest and the totality of the circumstances known to "Defendant" would

27   not allow a prudent person to conclude a fair probability that he had committed any such crimes,

28   as he was falsely accused. (Id. at 7.) Plaintiff argues that he never committed any of the crimes

1   he was accused of, nor involved, and the "Defendant" forced Plaintiff to defend himself for two

2   years "after they sent the person whom actually committed the crimes I was accused of to my

3   hired council [sic]."  (Id.)  Plaintiff states the "Defendant" cannot defend in this case as they had

4   the wrong guy from the beginning and never looked at the evidence they had for 2 years that

5   would have exonerated Plaintiff, that "they" abused their power to maliciously prosecute him;

6   and that he told the "Defendant" he would have taken a lie detector test if needed.  (Id. at 7-8.)

7        Plaintiff proffers that he wants to change the way "they approach the process of handling

8   cases like" his, to stop anther innocent citizen from going through what he did, and to make sure

9   the Defendants "do their job to first prove [his] innocence before assum[ing] [his] guilt which is

10  the[ir] sworn duty under the BARD STANDARD."  (Id. at 8.)  Plaintiff emphasizes that while he

11  is not a lawyer, he is innocent, and Defendant should not get away on technicalities but be

12  subject to the same repercussions as any other American citizen.  (Id.)

13       **C.     The Third Sub-Complaint Naming the Jail Defendants**

14       Paragraphs 4 and 5 from the first sub-complaint are reproduced verbatim within

15  Plaintiff's third sub-complaint.

16       Additionally in this section, Plaintiff states he is seeking 33 million dollars from "the

17  Defendant" for damages caused by their "improper police misconduct" when Plaintiff was

18  "forced to a[n] unlawful detainment and strip search, then told by the Defendant that the only

19  room in the Jail [] for me to be incarcerated [was] with my cousin whom just got convicted of 1st

20  degree murder."  (Id. at 11.)  Plaintiff requests the Court to look at the housing chart for the days

21  he was allegedly falsely imprisoned to see if the Defendant was lying to force him to be housed

22  with murderers when he wasn't even told why he was being detained.  (Id.)

23       Plaintiff states he wants "the Defendant to change the way they approach the process of

24  handling cases like [his] as to hopefully stop another innocent citizen . . . [from] go[ing] through

25  something like this," and to ensure the "Defendant" does their job to protect Plaintiff "from

26  possible violence being housed in a very volatile situation and never to withhold the truth to

27  house [him] in such volatile situations."  (Id. at 12.)

28       Plaintiff generally concludes by emphasizing he is not an attorney and cannot afford one

1  because of the damages caused by Defendant; that he was never guilty of the crimes he was
2  incarcerated for; that his name was slandered; that he was left to fight for his freedom; and that
3  Defendants have destroyed his life and that they should be held accountable.

**IV.**

**DISCUSSION**

6      For the reasons discussed below, the Court finds that Plaintiff has failed to state a
7  cognizable claim for relief in this matter.  The Court recommends that the complaint, filed May
8  26, 2021, be dismissed for failure to state a claim.

**A.     Federal Rule of Civil Procedure 8**

10      Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim
11  showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "Such a statement must
12  simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which
13  it rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal
14  quotation marks omitted).  Detailed factual allegations are not required, but "[t]hreadbare recitals
15  of the elements of a cause of action, supported by mere conclusory statements, do not suffice."
16  Iqbal, 556 U.S. at 678 (citation omitted).  This is because, while factual allegations are accepted
17  as true, legal conclusions are not.  Id.; see also Twombly, 550 U.S. at 556-57; Moss v. U.S.
18  Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  Therefore, Plaintiff must set forth "sufficient
19  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  A claim
20  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
21  reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at
22  678  (citations and internal quotation marks omitted).

23      As explained in the screening order, as currently pled, Plaintiff's complaint does not
24  contain enough factual details to permit the Court to draw the reasonable inference that any of
25  the Defendants are liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.  Most of Plaintiff's
26  allegations are vague and conclusory statements that his rights were violated by an unspecified
27  Defendant or Defendants.  It appears Plaintiff's only distinct allegation against the Police
28  Department Defendants are vague claims that an unspecified Defendant improperly handled

witness statements creating false memories used to get a false warrant.  (ECF No. 11 at 2.)  It appears the only distinct claim against the Jail Defendants is an allegation that he was subjected to a strip search when he was arrested and booked into jail for seventy-two (72) hours where he was kept in the same room as his cousin who just got convicted of murder.  (ECF No. 11 at 11.) It appears Plaintiff's only allegations specific to the District Attorney Defendants is the general statement that there was no probable cause to obtain a warrant or arrest Plaintiff based on the totality of the circumstances known to the "Defendant," and that the "Defendant" failed to look at the evidence that would have exonerated him.  (Id. at 6-7.)

Plaintiff does not present sufficient facts specifically pertaining to any of the Defendants that would state a claim under Rule 8, nor under the legal standards explained below.  Plaintiff's complaint is vague and unclear as to each separate Defendant's actions.  The complaint also improperly makes legal conclusions by alleging a legal claim without connecting specific factual details to the types of alleged legal claims.  Plaintiff essentially only provides legal conclusions that his rights were violated without explaining who did what or how.  Therefore, Plaintiff has not provided sufficient factual content for the Court to find any claim is plausible as presented. For these reasons, Plaintiff's complaint does not comply with the requirements of Rule 8(a)(2).

### B.   Unlawful Arrest, Search, and Excessive Force under the Fourth Amendment

Plaintiff avers to the probable cause standard for officers making an arrest.  Plaintiff also claims the arresting officer subjected Plaintiff to unreasonable force in connection with the arrest (apparently when he appeared on his own behalf at the booking station pursuant to a warrant), subjected Plaintiff to a strip search during the booking process, and committed battery in conducting such alleged illegal search and seizure.

The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV.

Warrantless searches would violate the Fourth Amendment unless the search falls within

1    an exception to the Fourth Amendment's warrant requirement.  See United States v. Ojeda, 276

2    F.3d 486, 488 (9th Cir. 2002) (citing Katz v. United States, 389 U.S. 347, 357 (1967)).

3           "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth

4    Amendment, provided the arrest was made without probable cause or other justification."

5    Dubner v. City & Cty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001).  "Probable cause to

6    arrest exists when officers have knowledge or reasonably trustworthy information sufficient to

7    lead a person of reasonable caution to believe that an offense has been or is being committed by

8    the person being arrested."  United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007).  "While

9    conclusive evidence of guilt is of course not necessary under this standard to establish probable

10   cause, [m]ere suspicion, common rumor, or even strong reason to suspect are not enough."  Id.

11   (internal quotations and citation omitted) (alteration in original).

12          Plaintiff fails to state a claim for unlawful arrest against of the officers because he

13   specifically states he turned himself in to the jail pursuant to a warrant.  "The Fourth Amendment

14   requires law enforcement officers to have probable cause to make an arrest if they do not have an

15   arrest warrant."  Braden v. Los Angeles Police Dep't, No. CV 16-7633 JVS(JC), 2017 WL

16   78467, at *3 (C.D. Cal. Jan. 9, 2017) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)); see also

17   Blankenhorn v. City of Orange, 485 F.3d 463, 476 (9th Cir. 2007) (Stating it was "clearly

18   established long ago that an officer may not conduct a warrantless arrest absent probable

19   cause.").  To the extent Plaintiff alleges the warrant was not based on probable cause, the Court

20   provides the standards for judicial and prosecutorial immunity below.

21          To the extent Plaintiff claims the search conducted during the booking process was

22   unlawful or amounted to excessive force, Plaintiff has not stated facts that would support a

23   finding that his constitutional rights were violated.  Both convicted prisoners and pretrial

24   detainees retain some Fourth Amendment rights upon commitment to a corrections facility,

25   however, the Fourth Amendment only prohibits unreasonable searches.  See, e.g., Bell v.

26   Wolfish, 441 U.S. 520, 558 (1979).  "The test of reasonableness under the Fourth Amendment is

27   not capable of precise definition or mechanical application [and] each case it requires a balancing

28   of the need for the particular search against the invasion of personal rights that the search

1   entails." Id.  "Courts must consider the scope of the particular intrusion, the manner in which it

2   is conducted, the justification for initiating it, and the place in which it is conducted." Id.

3       The Ninth Circuit has recognized that strip searches may be unreasonable if "excessive,

4   vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder v.

5   Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  " 'Correctional officials have a significant interest in

6   conducting a thorough search as a standard part of the intake process,' and the Supreme Court

7   has held that all detainees, when joining a general detained population, can be subject to strip

8   searches even without reasonable suspicion that a specific individual is concealing weapons or

9   other contraband." Belyew v. Honea, No. 217CV0508KJMACP, 2020 WL 6305866, at *2–3

10  (E.D. Cal. Oct. 28, 2020) (quoting Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 30-39

11  (2012)), report and recommendation adopted, No. 217CV0508KJMACP, 2021 WL 720231 (E.D.

12  Cal. Feb. 24, 2021); see also Fouche v. Holencik, No. ED CV 10-0087-MMM, 2012 WL

13  1901826, at *2–3 (C.D. Cal. Apr. 17, 2012) ("Applying the *Bell* and *Turner* factors, the United

14  States Supreme Court recently held that a jail's policy requiring all detainees—including those

15  being held on misdemeanor charges—to be strip searched prior to being placed in the general

16  population is reasonable under the Fourth Amendment.") (citing Florence, 566 U.S. 318).  "In

17  examining the conditions of pretrial detention, the question 'is whether those conditions amount

18  to punishment of the detainee.' " Belyew, 2020 WL 6305866, at *4 (quoting Bell, 441 U.S. at

19  535).

20      Plaintiff has not alleged any specific facts that would support a claim that the strip search

21  performed at booking was unlawful or violated his constitutional rights, whether Plaintiff states it

22  was an exercise of excessive force, or an unlawful search.  See Bell, 441 U.S. 520; Belyew, 2020

23  WL 6305866; Michenfelder v. Sumner, 860 F.2d at 332; Cf. Moore v. Howell, No.

24  219CV02108GMNBNW, 2020 WL 7081580, at *3 (D. Nev. Dec. 2, 2020) (finding cognizable

25  claim where defendant "conducted a vindictive strip search of Plaintiff and other inmates in

26  retaliation for another inmate filing a PREA complaint . . . [that] was not related to any

27  legitimate penological interest and was only conducted to punish Plaintiff and other inmates for

28  the PREA complaint.").

1    **C.      Falsification of Police Records**

2         Plaintiff avers to claims relating to the way officers handled witness statements and the

3    forensic evidence, and alleges this led to the officers causing witnesses to create false memories.

4    (ECF No. 11 at 2.)

5         Individuals have a constitutional due process right "not to be subjected to criminal

6    charges on the basis of false evidence that was deliberately fabricated by the government."

7    Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc).  To establish such a due

8    process violation, a plaintiff must, at a minimum, allege either: (1) that government officials

9    continued their investigation "despite the fact that they knew or should have known that

10   [Plaintiff] was innocent;" or (2) "used investigative techniques that were so coercive and abusive

11   that [they] knew or should have known those techniques would yield false information."

12   Cunningham v. Perez, 345 F.3d 802, 811 (9th Cir. 2003) (quoting Devereaux, 263 F.3d at 1076).

13        The complaint as submitted does not satisfy Rule 8 of the Federal Rules of Civil

14   Procedure.  Plaintiff fails to indicate in any specific detail how any officer mishandled witnesses

15   or any specific forensic evidence in a manner that demonstrates intentional falsification of any

16   record or evidence.  Further, if Plaintiff wishes to pursue claims against the agencies, Plaintiff

17   has not alleged any misconduct was part of a practice, custom, or policy, in order to establish

18   municipal liability against the Police Department or District Attorney's Office,[3] and has not

19   described how any prosecutor knowingly used false information in pursuing criminal charges

20   that was obtained by any police officer.  Plaintiff's bare conclusory allegations are not sufficient

21   to establish a claim, and does not satisfy the requirements of Federal Rule of Civil Procedure 8 as

22   the Court found above.

23        **D.      Malicious Prosecution and Prosecutorial/Judicial Immunity**

24        Plaintiff states he was subjected to a malicious false accusation that he was involved in a

25   crime at Lowe's Home Centers on November 3 and 10, 2018.

26        A claim for malicious prosecution or abuse of process is not generally cognizable under

27   _____

28   [3] Plaintiff does generally state he wishes to change the way "the Defendant" approaches the process of handling
     cases such as his, and generally avers to the duty under the BARD standard.  (ECF No. 11 at 8.)

1   Section 1983 if a process is available within the state judicial system to provide a remedy.  Usher

2   v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987) (citations omitted).  The exception is

3   "when a malicious prosecution is conducted with the intent to deprive a person of equal

4   protection of the laws or is otherwise intended to subject a person to denial of constitutional

5   rights."  Id. (citations omitted).  In order to prevail on a Section 1983 claim of malicious

6   prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without

7   probable cause, and that they did so for the purpose of denying [him] equal protection or another

8   specific constitutional right."  Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)

9   (citations omitted); see also Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004);

10  Lacey v. Maricopa County, 693 F.3d 896, 919 (9th Cir. 2012).  A malicious prosecution claim

11  may be brought against prosecutors or against the individuals who wrongfully caused the

12  prosecution.  Smith v. Almada, 640 F.3d 931, 938 (9th Cir. 2011).  Probable cause is an absolute

13  defense to malicious prosecution.  Lassiter v. City of Bremerton, 556 F.3d 1049, 1054 (9th Cir.

14  2009).

15       In order to state a malicious prosecution claim, Plaintiff must show that the prior

16  proceeding was commenced by or at the direction of a defendant and it was: 1) pursued to a legal

17  termination favorable to plaintiff; 2) brought without probable cause; and 3) initiated with

18  malice.  Ayala v. Environmental Health, 426 F.Supp.2d 1070, 1083 (E.D. Cal. 2006).  For the

19  termination to be considered "favorable" to the malicious prosecution plaintiff, it must be

20  reflective of the merits of the action and of the plaintiff's innocence of the charges.  Villa v.

21  Cole, 4 Cal.App.4th 1327, 1335 (1992); Awabdy, 368 F.3d at 1068 ("An individual seeking to

22  bring a malicious prosecution claim must generally establish that the prior proceedings

23  terminated in such a manner as to indicate his innocence.").  In this regard, "a dismissal in the

24  interests of justice satisfies this requirement if it reflects the opinion of the prosecuting party or

25  the court that the action lacked merit or would result in a decision in favor of the defendant," and

26  "[w]hen such a dismissal is procured as the result of a motion by the prosecutor and there are

27  allegations that the prior proceedings were instituted as the result of fraudulent conduct, a

28  malicious prosecution plaintiff is not precluded from maintaining his action unless the

1    defendants can establish that the charges were withdrawn on the basis of a compromise among

2    the parties or for a cause that was not inconsistent with his guilt." Id.

3        Plaintiff has failed to describe how any individual Defendant caused the case to be

4    prosecuted against Plaintiff with malice and without probable cause nor presented any specific

5    facts about any prosecution following his release after the seventy-two (72) hour hold after

6    turning himself in.  Plaintiff has not provided sufficient facts regarding the dismissal for the

7    Court to determine whether a malicious prosecution claim can be stated.  As Plaintiff was

8    previously advised, a dismissal resulting from negotiation, settlement or agreement is generally

9    not deemed a favorable termination of the proceedings.  Villa, 4 Cal.App.4th at 1335.  "[A]s a

10   matter of law. . . the favorable termination which is essential to the plaintiff in a malicious

11   prosecution action cannot be based on the dismissal of the criminal charges remaining after the

12   defendant in a criminal proceeding has entered a plea of nolo contendere to one or more of the

13   charges in the accusatory pleading pursuant to a plea bargain. Cote v. Henderson, 218 Cal. App.

14   3d 796, 804 (1990).  Plaintiff's complaint does not clearly indicate whether or how his case was

15   dismissed.

16       Further, as Plaintiff was previously advised, judges and prosecutors are immune from

17   liability under § 1983 when they are functioning in their official capacities under proper

18   jurisdiction. See Imbler v. Pactman, 424 U.S. 409, 427 (1976); see also Olsen v. Idaho State Bd.

19   of Medicine, 363 F.3d 916, 922 (9th Cir.2004) ("Absolute immunity is generally accorded to

20   judges and prosecutors functioning in their official capacities"); Ashelman v. Pope, 793 F.2d

21   1072, 1075-77 (9th Cir.1986) (noting that judges are generally immune from § 1983 claims

22   except when acting in "clear absence of all jurisdiction . . . or performs an act that is not

23   'judicial' in nature," and prosecutors are generally immune unless acting without "authority")

24   (internal citations omitted); Walters v. Mason, No. 215CV0822KJMCMKP, 2017 WL 6344319,

25   at *2 (E.D. Cal. Dec. 12, 2017) (same); Forte v. Merced Cty., No. 1:15-CV-0147 KJM-BAM,

26   2016 WL 159217, at *12–13 (E.D. Cal. Jan. 13, 2016) ("prosecutorial immunity protects eligible

27   government officials when they are acting pursuant to their official role as advocate for the

28   state"), report and recommendation adopted, No. 1:15-CV-0147-KJM-BAM, 2016 WL 739798

1    (E.D. Cal. Feb. 25, 2016); <u>Torres v. Saba</u>, No. 16-CV-06607-SI, 2017 WL 86020, at *3–4 (N.D.

2    Cal. Jan. 10, 2017).  Where a prosecutor acts within his authority " 'in initiating a prosecution

3    and in presenting the state's case,' absolute immunity applies."   <u>Ashelman</u>, 793 F.2d at 1076

4    (quoting <u>Imbler</u>, 424 U.S. at 431).  This immunity extends to actions during both the pre-trial and

5    posttrial phases of a case.  <u>See</u> <u>Demery v. Kupperman</u>, 735 F.2d 1139, 1144 (9th Cir. 1984).

6         Accordingly, the Court finds Plaintiff has not stated a claim for malicious prosecution.

7    **E.      Section 1983, Supervisory Liability, and Municipal Liability**

8         Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or

9    other federal rights by persons acting under color of state law.  <u>Nurre v. Whitehead</u>, 580 F.3d

10   1087, 1092 (9th Cir 2009); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006);

11   <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).  To state a claim under section 1983, a

12   plaintiff is required to show that (1) each defendant acted under color of state law and (2) each

13   defendant deprived her of rights secured by the Constitution or federal law.  <u>Long</u>, 442 F.3d at

14   1185 (9th Cir. 2006).   There is no *respondeat superior* liability under section 1983, and

15   therefore, each defendant is only liable for his or her own misconduct.  <u>Iqbal</u>, 556 U.S. at 677.

16   To state a claim, Plaintiff must demonstrate that each defendant personally participated in the

17   deprivation of his rights.  <u>Jones</u>, 297 F.3d at 934.

18        In other words, to the extent Plaintiff is attempting to make a claim against a district

19   attorney or police officer that was not personally involved but was only acting as a supervisor

20   over an officer or assistant district attorney, Plaintiff cannot state a claim unless they were

21   personally and directly involved in the violation of his rights.

22        Further, a local government unit may not be held responsible for the acts of its employees

23   under a *respondeat superior* theory of liability.  <u>Monell v. Department of Social Services</u>, 436

24   U.S. 658, 691 (1978).  Rather, a local government unit may only be held liable if it inflicts the

25   injury complained of through a policy or custom.  <u>Waggy v. Spokane County Washington</u>, 594

26   F.3d 707, 713 (9th Cir. 2010).  Generally, to establish municipal liability, the plaintiff must show

27   that a constitutional right was violated, the municipality had a policy, that policy was deliberately

28   indifferent to plaintiff's constitutional rights, and the policy was "the moving force" behind the

constitutional violation.  Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 400 (1997); Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002).  "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' "  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).

A failure to train may establish liability where such omission of training amounts to deliberate indifference to a constitutional right.  Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010), overruled on other grounds by Castro, 833 F.3d 1060.  This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  Id. at 1249 (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989).  "For example, if police activities in arresting fleeing felons 'so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers,' then the city's failure to train may constitute 'deliberate indifference.' "  Id.   "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.' "  City of Canton, 489 U.S. at 379.  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  Connick v. Thompson, 563 U.S. 51, 62 (2011) (citation omitted).

A plaintiff seeking to impose liability upon a municipality is required to identify the policy or custom that caused the constitutional injury.  Bd. of Cty. Comm'rs of Bryan Cty., Okl., 520 U.S. at 403.  If Plaintiff is attempting to bring claims against the Police Department, the County Jail., or the District Attorney's Office, as agencies and not just against the individuals involved, Plaintiff has failed to state a plausible claim based on a custom or policy or failure to train.

/ / /

1      **F.      Bane Act**

2      The Bane Act provides a private cause of action against anyone who "interferes by

3      threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion,

4      with the exercise or enjoyment by an individual or individuals of rights secured by the

5      Constitution or laws of the United States, or laws and rights secured by the Constitution or laws

6      of California." Cal. Civ. Code § 52.1(a). The Bane Act requires "an attempted or completed act

7      of interference with a legal right, accompanied by a form of coercion." Jones v. Kmart Corp., 17

8      Cal. 4th 329, 334 (1998). "The essence of a Bane Act claim, under California law, is that the

9      defendant, by the specified improper means, tried to or did prevent the plaintiff from doing

10     something he or she had the right to do under the law or to force the plaintiff to do something he

11     or she had the right to do under the law or to force the plaintiff to do something that he or she

12     was not required to do under the law. Lawman v. City and County of San Francisco, 159 F.

13     Supp. 3d 1130 (N.D. Cal. 2016). A Bane Act claim "requires a specific intent to violate the

14     arrestee's right to freedom from unreasonable seizure." Reese v. County of Sacramento, 888

15     F.3d 1010, 1043 (9th Cir. 2018).

16     Plaintiff requests the Court hold the unspecified Defendant(s) "accountable for violations

17     under the Bane Act 52.1 for committing humiliator battery against [Plaintiff] for a[n] illegal

18     search and seizure being an accused citizen and not a guilty party, including I move to Impeach

19     the DEFENDANT'S for violation [of] my civil rights under the intentional infliction of

20     emotional distress violation California civ. Code 4030 and section 1983 [sic]." (Id. at 3, ¶ 4.)

21     Overall, the complaint lacks sufficient factual details pertaining to any Defendant to state

22     a claim for a Bane Act violation. More specifically, based on the Court's discussion above

23     regarding the fact that Plaintiff appeared at the police station or jail pursuant to his knowledge of

24     a warrant, and was not arrested or brought into the station, as well as the legal standards and facts

25     discussed above regarding the strip search that was employed when Plaintiff entered the jail, the

26     Court finds Plaintiff has not sufficiently pled facts that would state a claim for a cognizable Bane

27     Act violation against any of the named Defendants. See Reese, 888 F.3d at 1043-44; Cornell v.

28     City & County of San Francisco, 17 Cal.App.5th 766, 801-02 (2017) (any arrest without

1    probable cause involves coercion, and where accompanied by evidence of specific intent to

2    violate the arrestee's Fourth Amendment rights, such an arrest may provide the basis for a Bane

3    Act claim); <u>Lowe v. County of Butte</u>, No. 2:20-cv-01997-JAM-DMC, 2021 WL 1890386, at *9

4    (E.D. Cal. May 11, 2021) (noting that the court in <u>Cornell</u> found that the plaintiff did not have to

5    demonstrate additional coercive or threatening facts beyond the false arrest claim because there

6    is something inherently coercive about an arrest).

7              **G.    Allegations of Slander and Defamation**

8              Plaintiff claims emotional distress from slander, and or defamation of character, and

9    appears to cite California Penal Code § 4030 pertaining to strip and body cavity searches in

10   relation to the claim.  Slander is an oral defamatory statement.  To bring a claim for defamation

11   in a Section 1983 action, Plaintiff must meet the "stigma-plus," or "defamation-plus" standard.

12             "To establish a claim for defamation under Section 1983, a plaintiff must first establish

13   defamation under state law."  <u>Flores v. City of Bakersfield</u>, No. 1:17-CV-1393-JLT, 2019 WL

14   7038385, at *17 (E.D. Cal. Dec. 20, 2019) (citing <u>Crowe v. County of San Diego</u>, 242 F.Supp.2d

15   740, 746 (S.D. Cal. 2003)).  Under California law, the elements of a defamation claim are: "(a) a

16   publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural

17   tendency to injure or that causes special damage."  <u>Kaufman v. United Health Group Inc.</u>, 546

18   Fed. Appx. 691, 692 (9th Cir. 2013) (quoting <u>Taus v. Loftus</u>, 40 Cal.4th 683, 54 Cal.Rptr.3d 775,

19   151 P.3d 1185, 1209 (Cal.2007)).  To be actionable, an allegedly defamatory statement must,

20   among other things, "contain a provably false factual connotation."  <u>Gilbrook v. City of</u>

21   <u>Westminster</u>, 177 F.3d 839, 861 (9th Cir.) (citation omitted).  "Under California law, although a

22   plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory

23   statement must be specifically identified, and the plaintiff must plead the substance of the

24   statement. <u>Jacobson v. Schwarzenegger</u>, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004).

25             In a § 1983 action, injury to reputation alone is not enough to state a claim.  "The

26   procedural due process rights of the Fourteenth Amendment apply only when there is a

27   deprivation of a constitutionally protected liberty or property interest."  <u>WMX Techs., Inc. v.</u>

28   <u>Miller ("WMX II")</u>, 197 F.3d 367, 373 (9th Cir. 1999).  The Supreme Court has made it clear

that reputation alone is not an interest protected by the Constitution.  WMX II, 197 F.3d at 373; see Paul v. Davis, 424 U.S. 693, 706 (1976) ("the Court has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment").  "[R]eputational harm alone does not suffice for a constitutional claim."  Miller v. California, 355 F.3d 1172, 1178 (9th Cir. 2004).  Absent a change in status, "any harm or injury to that interest . . . inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law."  Paul, 424 U.S at 712.  Plaintiff must demonstrate the loss of a recognizable property or liberty interest in conjunction with the allegation that they suffered injury to reputation.  Miller, 355 F.3d at 1179; Cooper v. Dupnik, 924 F.2d 1520, 1532 (9th Cir. 1991), rev'd on other grounds, 963 F.2d 1220, 1235 n.6 (9th Cir. 1992)).  A plaintiff can meet this test by showing that "injury to reputation was inflicted in connection with a federally protected right" or that "injury to reputation caused the denial of a federally protected right."  Herb Hallman Chevrolet, Inc. v. Nash–Holmes, 169 F.3d 636, 645 (9th Cir. 1999); Cooper, 924 F.2d at 1532-33.  This is referred to both as a "defamation-plus" or "stigma-plus" claim.  See, e.g., Flores, 2019 WL 7038385, at *17.

Plaintiff has not put forth factual allegations that his reputation was injured in connection with a federally protected right or that the damage caused him to be denied a federally protected right.  Even if Plaintiff could not meet the defamation-plus standard but *was* able to demonstrate defamation under California law, the Court would also decline to exercise supplemental jurisdiction over such state claim because Plaintiff failed to state a separate cognizable federal claim, as explained herein.  See Ward v. Webber, No. 118CV00916SABPC, 2018 WL 3615853, at *3 (E.D. Cal. July 26, 2018) ("Because Plaintiff fails to state a cognizable federal claim, the Court will not exercise supplemental jurisdiction over his state law [slander] claim, even if he cures the deficiencies and states a claim.") (citing 28 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001)).

/ / /

/ / /

### H.      Intentional Infliction of Emotional Distress

Plaintiff lists a claim for intentional infliction of emotional distress, averring to slander, defamation, and violation of his constitutional rights.

The elements for a claim of intentional infliction of emotional distress under California law are: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress."   Wong v. Tai Jing, 189 Cal.App.4th 1354, 1376 (2010) (quoting Agarwal v. Johnson, 25 Cal.3d 932, 946 (1979)).  Conduct is "outrageous if it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' "  Simo v. Union of NeedleTrades, Industrial & Textile Employees, 322 F.3d 602, 622 (9th Cir. 2002) (quoting Saridakis v. United Airlines, 166 F.3d 1272, 1278 (9th Cir. 1999)).  The emotional distress must be "of such a substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it."  Simo, 322 F.3d at 622.

Given the legal standards and facts discussed above pertaining to the Fourth Amendment pertaining to the strip search of Plaintiff, Section 1983 linkage, prosecutorial/judicial immunity, and defamation/slander, Plaintiff has not stated sufficient facts pertaining to any named Defendant or unnamed individual that would rise to the level to state a claim for intentional infliction of emotional distress.

## V.

## DISMISSAL FOR FAILURE TO COMPLY AND FAILURE TO PROSECUTE

Plaintiff has failed to comply with the August 10, 2021 order granting him leave to file an amended complaint.  A court may dismiss an action based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules.  See, e.g. Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended complaint); Carey v. King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring pro se plaintiffs to keep court apprised of address); Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (dismissal

1  for failure to comply with court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir.

2  1986) (dismissal for lack of prosecution and failure to comply with local rules).

3       "In determining whether to dismiss an action for lack of prosecution, the district court is

4  required to consider several factors: '(1) the public's interest in expeditious resolution of

5  litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants;

6  (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less

7  drastic sanctions.' " Carey, 856 F.2d at 1440 (quoting Henderson v. Duncan, 779 F.2d 1421,

8  1423 (9th Cir. 1986)). These factors guide a court in deciding what to do, and are not conditions

9  that must be met in order for a court to take action. In re Phenylpropanolamine (PPA) Products

10  Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

11       In this instance, the public's interest in expeditious resolution of the litigation and the

12  Court's need to manage its docket weigh in favor of dismissal.  In re Phenylpropanolamine

13  (PPA) Products Liability Litigation, 460 F.3d at 1226.  Plaintiff was ordered to file an amended

14  complaint within thirty (30) days of August 10, 2021.  Plaintiff has neither filed an amended

15  complaint nor otherwise responded to the Court's order.

16       Plaintiff's failure to comply with the orders of the Court hinders the Court's ability to

17  move this action towards disposition, and indicates that Plaintiff does not intend to diligently

18  litigate this action.

19       Since it appears that Plaintiff does not intend to litigate this action diligently there arises a

20  rebuttable presumption of prejudice to the defendants in this action.  In re Eisen, 31 F.3d 1447,

21  1452-53 (9th Cir. 1994).  This risk of prejudice may be rebutted if Plaintiff offers an excuse for

22  the delay.  In re Eisen, 31 F.3d at 1453.  Plaintiff has not responded to the August 10, 2021 order

23  so the risk of prejudice to the defendants also weighs in favor of dismissal.

24       The public policy in favor of deciding cases on their merits is outweighed by the factors

25  in favor of dismissal.  It is Plaintiff's responsibility to move this action forward.  This action can

26  proceed no further without Plaintiff's cooperation and compliance with the order at issue.  There

27  is no operative pleading that states a claim in this matter and the action cannot simply remain

28  idle on the Court's docket, unprosecuted.  In this instance, the fourth factor does not outweigh

1   Plaintiff's failure to comply with the Court's orders.

2       Finally, monetary sanctions are not available to induce compliance because Plaintiff is
3   proceeding *in forma pauperis* in this action.  Additionally, a court's warning to a party that their
4   failure to obey the court's order will result in dismissal satisfies the "consideration of
5   alternatives" requirement.  Ferdik, 963 F.2d at 1262; Malone, 833 F.2d at 132-33; Henderson,
6   779 F.2d at 1424.  Here, due to Plaintiff's *pro se* status, the Court provided a simplified summary
7   of the reasons why Plaintiff's first and second amended complaints were deficient, and provided
8   directed instructions as to how Plaintiff should proceed in correcting such deficiencies.  (ECF
9   Nos. 10 at 1-3; 13 at 1-3.)  Most recently, on August 10, 2021, the Court specifically informed
10  Plaintiff that his complaint did not satisfy Federal Rule of Civil Procedure 8's requirement to
11  provide a short and plain statement of the claims made against each defendant.  The Court
12  notified Plaintiff that the complaint was deficient in that it was vague and unclear as to each
13  separate Defendant's actions; that it improperly makes legal conclusions by alleging a claim
14  without connecting specific factual details to the types of alleged claims; and thus that it did not
15  provide sufficient factual content for the Court to find any claim was plausible as presented.
16  (ECF No. 13 at 2.)  Plaintiff was specifically instructed the he "must present his claims in a clear
17  manner describing what **each Defendant specifically did** to Plaintiff that would form a claim
18  against that specific Defendant and clearly state the legal claim he is pursuing against each
19  Defendant." (ECF No. 13 at 3 (emphasis in original).)  Plaintiff was specifically warned that the
20  failure to file a third amended complaint in compliance with the order would result in the
21  recommendation that this action be dismissed, with prejudice, for failure to obey a court order,
22  failure to prosecute, and failure to state a claim.  (ECF No. 13 at 17.)

23      Accordingly, the Court finds that the balance of the factors weighs in favor of dismissing
24  this action for Plaintiff's failure to comply with the August 10, 2021 order, and failure to
25  prosecute.

26  / / /

27  / / /

28  / / /

# VI.

## CONCLUSION AND RECOMMENDATIONS

Plaintiff has failed to state a cognizable claim for a violation of his federal rights in this action.  Further, considering the factors to be evaluated in determining whether to dismiss this action for the failure to comply and failure to prosecute, the Court finds that the factors weigh in favor of dismissal of this action.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's second amended complaint filed May 26, 2021 (ECF No. 11), be DISMISSED for failure to state a cognizable claim; and

2. This matter be dismissed for Plaintiff's failure to comply with the Court's August 10, 2021 order (ECF No. 13), and failure to prosecute.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **thirty (30) days** of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 8, 2021**

UNITED STATES MAGISTRATE JUDGE